UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> GREGORY ANTONIO BATES FELTON, <br><br> *Defendant.* | CASE NO. 3:03-cr-8-3 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant Gregory Antonio Bates Felton's motion for resentencing pursuant to the First Step Act of 2018. Dkts. 441, 451. Having reviewed the submissions from both sides, the record, and recent developments in the Fourth Circuit's caselaw, the Court finds that Felton's sentence should be reduced. The Court further finds, based on a recalculation of the Sentencing Guidelines and fresh consideration of the § 3553(a) factors, that a downward variance is appropriate.

I

A

In 2002 law enforcement began investigating a large-scale drug conspiracy in Charlottesville, Virginia. Dkt. 424, Presentence Investigation Report ("PSR"), ¶ 10. Gregory Felton and Tadashi Keyes served as the conspiracy's "enforcers." *Id*. at ¶ 14. Both individuals carried and used firearms in conjunction with their role. *Id*. On August 30, 2002, Keyes and Felton robbed a drug user they suspected of working with the police. *Id*. at ¶ 15. During the struggle Felton punched the user in the face and took $321 in cash from his person. *Id*. At some point the user pulled a knife and Keyes fired his gun, wounding the user in the arm. *Id*. Forensic

evidence suggests that Felton also fired his firearm twice during the incident. *Id*. Two weeks later, on September 14, 2002, Felton, Keyes, and other members of the conspiracy confronted another drug user they believed to have stolen firearms from the group. *Id*. at ¶ 16. Felton shot and killed him. *Id*.

A six-count superseding indictment filed on August 7, 2003, charged Felton with, among other things,

- <u>Count One</u>: Conspiracy to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A);

- <u>Count Four</u>: Possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c), in connection with the August 30, 2002 shooting; and,

- <u>Count Five</u>: Murder with use of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(j), in connection with the September 14, 2002 murder.

Dkt. 40. Felton was tried and convicted by a jury on the listed counts in April 2004. Dkt. 147.

When Felton was originally sentenced a violation of § 841(b)(1)(A) carried a mandatory minimum sentence of ten years and a maximum sentence of life imprisonment. PSR ¶ 95. Felton's Guideline sentence for that count was calculated at an offense level of 43 based on the murder cross-reference in U.S.S.G § 2D1.1(d). *Id*. at ¶ 24. An offense level of 43 corresponds to a Guideline sentence of life. *Id*. at ¶ 96. With respect to the § 924(c) count, the statute provided for an enhanced mandatory minimum of ten years because a firearm was discharged. § 924(c)(1)(A)(iii).[1] Section 924(c) also provides that sentences imposed under its terms must run consecutive to any other sentence. *Id*. The Guideline sentence was the term of imprisonment

---

[1] Since the underlying offense conduct involved the discharge of a firearm, the enhanced statutory penalty was understood to apply. As discussed below, a finding that enhances a statutory minimum sentence must now be made by a jury.

required by statute. PSR ¶ 47. Finally, a violation of § 924(j)(1) carried a maximum sentence of life. *Id*. at ¶ 95. Again, any sentence on this count had to run consecutive to any other sentence. *Id*. at ¶ 97. The Guideline sentence for the § 924(j)(1) count was calculated at an offense level of 43, *id*. at ¶ 30; which, again, corresponds to a Guideline sentence of life, *id*. at ¶ 96.

The Guidelines were mandatory at the time of Felton's sentencing. Accordingly, the Court sentenced Felton to two life terms plus 120 months. Dkt. 207.

**B.**

The Fair Sentencing Act of 2010 "reduced sentencing disparities between cocaine and crack cocaine offenses, which were widely criticized for producing racially disproportionate sentencing outcomes." *United States v. Collington*, 995 F.3d 347, 351 (4th Cir. 2021). But the Act only applied prospectively. Congress passed the First Step Act eight years later to allow for resentencing of individuals like Felton who were sentenced too early to benefit from the Fair Sentencing Act's reforms. *Id*. at 352.

Section 404(b) of the First Step Act of 2018 permits "a court that imposed a sentence for a covered offense" to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." A "covered offense" is defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010[.]" *Id*.

Less clear is the scope of relief available under the First Step Act for defendants with a covered offense. Felton argues that the First Step Act authorizes resentencing on all counts of conviction, as opposed to covered offenses alone, on the theory that sentences are imposed as part of a package that cannot be unbundled. This approach is not without precedent. In *United States v. Hudson*, for example, the Seventh Circuit held that a defendant with at least one

covered offense qualifies for resentencing on the aggregate penalty. 967 F.3d 605, 611 (7th Cir. 2020) ("[A] court may consider a defendant's request for a reduced sentence, including for non-covered offenses that are grouped with the covered offenses to produce the aggregate sentence."). *See also e.g.*, *United States v. Pettaway*, No. 4:06-cr-00098, 2021 WL 5566158, at *3 (E.D. Va. Nov. 11, 2021) (Davis C.J.) ("Because Count Three is a covered offense [within the meaning of § 404(b) of the First Step Act], the 'sentencing package doctrine' renders it unnecessary for the Court to decide whether [petitioner's other conviction] is also a covered offense."); *United States v. Wright*, 425 F.Supp.3d 588, 598 (E.D. Va. 2019) (holding that the First Step Act authorizes resentencing on all counts of conviction, including counts not modified by section 2 or 3 of the Fair Sentencing Act, since the alternative would "unbundl[e] the entire sentence package.") (quoting *United States v. Hadden*, 475 F.3d 652, 669 (4th Cir. 2007)).

While these cases are not controlling, their reasoning is consistent with Fourth Circuit precedent. In general, the Fourth Circuit has endorsed the view that a sentence resulting from multiple counts of conviction should be determined by considering all counts together rather than by calculating the appropriate sentence for each count in isolation and aggregating the results. *See e.g.*, *United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017) ("The sentencing package doctrine accounts for the holistic approach that a district court should employ when sentencing a defendant convicted of multiple offenses."); *Hadden*, 475 F.3d at 669 (acknowledging the "sentence-package theory of sentencing", under which "a sentence is not merely the sum of its parts"). *See also Dean v. United States*, 137 S.Ct. 1170, 1176 (2017) ("As a general matter, [federal law] permit[s] a court imposing a sentence on one count of conviction to consider sentences imposed on other counts.").

Specifically addressing resentencings under the First Step Act, the Fourth Circuit has stated that "the First Step Act tasks district courts with making *a holistic resentencing determination* as to whether the original sentence remains appropriate in light of the Fair Sentencing Act's reforms." *Collington*, 995 F.3d at 335 (emphasis added). To be sure, "[a] First Step Act proceeding is not a plenary resentencing." *United States v. Webb*, 5 F.4th 495, 498 (4th Cir. 2021). But the Fourth Circuit has already determined that "holistic resentencing" under the First Step Act must include recalculation of the Guideline sentence range in light of intervening caselaw and fresh consideration of the § 3553(a) factors. *Collington*, 995 F.3d at 355. Given the Fourth Circuit's past association of the sentencing package doctrine with "the holistic approach that a district court should employ when sentencing a defendant convicted of multiple offenses", *Ventura*, 864 F.3d at 309, Felton's proposed interpretation fits logically alongside the Fourth Circuit's more recent elaborations on the "holistic resentencing" required by the First Step Act.

Felton's interpretation also aligns with the text of the First Step Act, which says that a court may impose a reduced sentence on eligible defendants "as if" the Fair Sentencing Act "were in effect at the time the covered offense was committed." § 404(b). Precisely because "[s]entences for covered offenses are not imposed in a vacuum, hermetically sealed off from sentences imposed for non-covered offenses", *Hudson*, 967 F.3d at 611, the entire bundle would be different if the Fair Sentencing Act were in effect at the time of the original sentencing.

On the other hand, the rule Felton proposes leads to a morass of quandaries for district courts. Does intervening caselaw apply when recalculating non-covered offenses too? If so, serious arbitrariness issues present themselves. But if not, district courts are faced with the discomfiting task of resentencing a defendant to a term of imprisonment using bad law.

A few examples illustrate the problem. Before Congress passed the First Step Act in 2018, a defendant charged with two or more counts of possessing a firearm during and in relation to a crime of violence was subject to a mandatory minimum of five years incarceration (more if the firearm was brandished or discharged) on the first count and 25 consecutive years on each additional count. This practice, referred to as sentence "stacking," was criticized for its often-draconian consequences. *See United States v. McCoy*, 981 F.3d 271, 285 (4th Cir. 2020) (noting the "sheer and unusual length of sentences" resulting from § 924(c) "stacking," which "were about twice as long as federal sentences imposed today for murder."). Another provision in the First Step Act revised 18 U.S.C. § 924(c)(1)(C) so that the higher penalty for a "second or subsequent count of conviction" under § 924(c) would be triggered only when a defendant has a prior § 924(c) conviction that has become final. The 25-year mandatory minimum is now statutorily "reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution." *United States v. Jordon*, 952 F.3d 160, 171 (4th Cir. 2020).

But the change did not apply retroactively. *Jordon*, 952 F.3d at 174. And the First Step Act does not include § 924(c) among the "covered offenses" eligible for resentencing. Therefore, allowing § 404(b) of the First Step Act to open the door to reconsideration of § 924(c) sentences under today's law would have the effect of giving relief to defendants who were convicted of two or more § 924(c)'s and also a qualifying drug offense, but not defendants convicted of two or more § 924(c)'s who were not also convicted of a qualifying drug offense.

Another issue likely to recur, and which is actually presented by this case, is the mandatory minimum sentence applicable to an isolated § 924(c) count. Section 924(c) is broken down into three statutory subsections with escalating mandatory minimum sentences. Use and

carry of a firearm in furtherance of a crime of violence or drug trafficking crime results in a five-year mandatory minimum sentence under § 924(c)(1)(A)(i)—while brandishing the firearm elevates that mandatory minimum to seven years under § 924(c)(1)(A)(ii)—and discharging the firearm results in a 10-year mandatory minimum sentence under § 924(c)(1)(A)(iii). Because Felton's offense conduct—the events of August 30, 2002—involved the discharge of Keyes' firearm, the Court deemed applicable the most severe minimum sentence of 10 years. However, intervening caselaw requires any fact that changes the statutory minimum and maximum sentences to be found by the jury. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Alleyne v. United States*, 570 U.S. 99 (2013). And the jury in this case only found that Felton was guilty of a violation of § 924(c)(1) generally. It did not find discharge of a firearm. *See* Dkt. 147. Therefore, if the Court were to resentence Felton on the § 924(c) charge and apply intervening caselaw, the applicable statutory minimum would be five years. And because the Guideline sentence for a § 924(c) conviction is the mandatory minimum term under the statute, U.S.S.G. § 2K2.4(b), the Guideline sentence for Count Four would be reduced to five years. Under such a regime, defendants like Felton who happen to have a qualifying drug offense in their sentencing bundle could also have their § 924(c) sentence cut in half. While those who do not are out of luck. This is poor medicine for sentencing disparity.[2]

---

[2] It is worth noting, however, that courts generally do not limit the application of current law to those aspects of a sentence that justified resentencing in other contexts where a sentence has been vacated and a new sentence imposed. Instead, "current sentencing law is generally applicable when a defendant is sentenced *or resentenced*[.]" *Pettaway*, 2021 WL 5566158, at *4 (noting the general rule, while also finding it inapplicable to "subsequent reduced statutory punishments" due to the savings statute codified at 1 U.S.C. § 109) (emphasis added). In *United States v. Fluker*, for example, the Fourth Circuit applied current sentencing law at resentencing following a successful 28 U.S.C. § 2255 petition to determine whether the petitioner qualified as a career offender under the Guidelines even though his status as a career offender was not the reason for vacatur. 891 F.3d 541 (4th Cir. 2018). *See also United States v. Bethea*, 841 F. App'x 544 (4th Cir. 2021) (applying First Step Act's intervening amendments to 21 U.S.C. § 841 in

Although precedent on the issue is not uniformly in this direction,[3] the Court concludes that Fourth Circuit precedent supports application of the sentencing package doctrine to resentencings under the First Step Act, and that a sentence cannot be brought in line with the sentence a court would have imposed under the Fair Sentencing Act unless the entire sentence, as opposed to the covered offense in isolation, is included as part of the resentencing. However, because the Court would impose the same sentence regardless, the Court does not resolve the question whether intervening case law should be used to recalculate non-covered offenses.[4]

## II.

### A.

Count One, conspiracy to distribute 50 grams or more of cocaine base in violation §§ 841(a)(1) and 841(b)(1)(A), is indisputably a "covered offense" within the meaning of the First Step Act. *See United States v. Wirsing*, 943 F.3d 175, 186 (4th Cir. 2019) ("All defendants who

---

resentencing occasioned by unrelated issue); *United States v. Braswell*, 462 F. Supp. 3d 603, 609 (E.D.N.C. 2020) (Flanagan, J.) ("[D]efendant should benefit from the retroactive changes to the statutory penalties even though the habeas claim was not based on those statutory changes."). Moreover, the inequities inevitably resulting from this practice have not in the past been considered a sufficient reason to deny defendants the benefit of intervening changes in the law upon resentencing. *See e.g.*, *Bethea* 841 Fed. App'x. at 552 ("[D]isparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences.") (quoting *Dorsey v. United States*, 567 U.S. 260, 280 (2012)).

[3] *See United States v. Young*, 998 F.3d 43, 46–47 (2d Cir. 2021) (pointing to the lack of statutory authorization in the First Step Act to reject petitioner's argument that his eligibility for resentencing on one count made him eligible for resentencing on the other count because the two counts were "grouped with and formed an interdependent sentencing package with a covered offense."); *United States v. Baptiste*, 834 F. App'x. 547, 550 (11th Cir. 2020) (same).

[4] The Court will, however, apply the remedial holding of *United States v. Booker*, 543 U.S. 220, (2005) because its applicability to resentencings is well established. *See United States v. Dunphy*, 551 F.3d 247, 253 (4th Cir. 2009) ("*Booker* applies to full sentencing hearings—whether in an initial sentencing or in a resentencing where the original sentence is vacated for error.").

are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii) . . . are eligible to move for relief under the Act"). Therefore, Felton qualifies for resentencing.

**B.**

The Guidelines call for a sentence of 480 months on Count One. A violation of § 841(b)(1)(A) now carries a mandatory minimum sentence of 10 years and a maximum sentence of 480 months. Felton would still have a base offense level of 43 under the Guidelines due to the murder cross-reference.[5] Regardless of criminal history category, a base offense level of 43 corresponds to a Guideline sentence of life. *See* U.S.S.G. § 5A, Sentencing Table. However, the new statutory maximum triggers the cap provided by U.S.S.G. § 5G1.1(a), which instructs that "where the statutorily authorized maximum sentence is less than the minimum applicable guideline range, the statutorily authorized maximum sentence shall be the guideline range." Therefore, the Guideline sentence on Count One is the new statutory maximum sentence of 480 months.

Count Four, the § 924(c) conviction, presents the difficult question. But regardless of whether Felton were resentenced under current law or the law in 2004, the Court would nevertheless apply the § 3553(a) sentencing factors at the end of the analysis to impose the same total sentence.[6] *Cf. Dean* 137 S. Ct. at 1175 ("The § 3553(a) factors are used to set both the

---

[5] Felton argues that recalculation of his Guideline range for this offense should include a change in his cross-reference from first-degree to second-degree murder. Felton is correct that his sentence should be calculated according to the 2018 Guidelines, which cross-references both first and second-degree murder, as opposed to the 2003 Guidelines, which only cross-references first-degree murder. *See Fluker*, 891 F.3d at 547 (4th Cir. 2018) (noting the general rule that, in the absence of an *Ex Post Facto* Clause issue, "courts sentence a defendant using the Guidelines Manual that is 'in effect on the date the defendant is sentenced.'") (quoting 18 U.S.C. § 3553(a)(4)(A)(ii)). However, the first-degree murder cross-reference applies because of the jury's finding that Felton killed with malice aforethought. Dkt. 147 at 2.

[6] Felton's argument that Count One does not supply a predicate drug trafficking crime for a § 924(c) conviction because it does not contain an overt act as an element, Dkt. 451 at 13–16,

length of separate prison terms and an aggregate prison term comprising of separate sentences for multiple counts of conviction."); *id*. at 1176 ("As a general matter, [federal law] permit[s] a court imposing a sentence on one count of conviction to consider sentences imposed on other counts", including counts with mandatory minimums).

No intervening caselaw or Guideline amendment has changed the Guideline sentence as to Count Five. The Guideline sentence remains life.

Thus, Felton's total Guideline sentence is one life term plus between 540 and 600 months, consisting of a life term on Count Five, 480 months on Count One, and either 60 or 120 months (depending on whether intervening caselaw is applied) on Count Four.

The question remains whether Felton is eligible for a downward departure or variance from the Guideline sentence.

18 U.S.C. § 3553(a) specifies the factors courts are to consider in imposing a sentence. The list of factors is preceded by a broad admonition that courts "impose a sentence sufficient, but not greater than necessary, to comply with" the purposes of sentencing, which the statute identifies as just punishment, deterrence, protection of the public, and rehabilitation.

The § 3553(a)(2)(A) factors call for, among other things, a sentence that "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment[.]" Needless to say, these factors call for a substantial term of incarceration. The conduct underlying

---

is unavailing. "§ 924(c) requires the government to present evidence indicating that the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime." *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002). Carrying a firearm in furtherance of a drug trafficking conspiracy meets that standard. *See United States v. Jeffers*, 570 F.3d 557, 565 (4th Cir. 2009) (finding sufficient evidence for a § 924(c) conviction where "the evidence linked [Defendant] to multiple firearms during the course of the [drug] conspiracy offense."). As here, the § 924(c) count in *Jeffers* explicitly referred to the drug trafficking conspiracy count. *Id*; Dkt. 147 at 2.

Felton's offenses includes murder and a violent robbery perpetrated by Keyes and Felton, in which Keyes shot a man. Not to mention participation in a significant drug distribution conspiracy, for which the probation office determined that Felton was responsible for the distribution of at least 1.5 kilograms of crack cocaine.

Nevertheless, Felton urges that other factors suggest life imprisonment is "greater than necessary, to comply with the purposes set forth" by Congress. Felton points specifically to his progress report, which is favorable and relevant to rehabilitative factors such as the need "to protect the public from further crimes of the defendant[.]" § 3553(a)(2)(C). Even more significant to the Court is the fact that Felton has not incurred a single disciplinary infraction in almost four years. Dkt. 484, p. 1. And while the Court cannot ignore the serious disciplinary infractions further back in Felton's record, including two infractions for drug or alcohol use (2018 and 2015) and two possession of a dangerous weapon infractions (both in 2009), Dkt. 453, Ex. 1, the Court considers these in light of Felton's more recent good behavior.

The Court also finds significant the impressive number of educational courses Felton has completed during his time in prison, including coursework toward a commercial drivers' license and his GED. Dkt. 484, Ex. 1. *Cf. United States v. Chambers*, 956 F.3d 667, 675 (4th Cir. 2020) (holding that the district court erred in its belief that it could not consider post-sentencing conduct when analyzing the § 3553(a) factors in a First Step Act resentencing).

The defendant's youth at the time of the offense is also of special importance to the Court's determination. Felton was 20 years old at the time of the underlying conduct. U.S.S.G. § 5H1.1 provides that "[a]ge (including youth) may be relevant in determining whether a departure is warranted[.]." Similarly, under § 3553(a), the "nature and circumstances" of the offense, as well as a defendant's "history and characteristics" are relevant to sentencing. § 3553(a)(1).

"The Supreme Court has recognized, in the sentencing context, the diminished culpability of juvenile offenders, given their lack of maturity, vulnerability to social pressures, and malleable identities." *United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014) (citing authority). The PSR suggests just this kind of pressure was at work in Felton's case. While certainly not a minor, Felton was surrounded by co-conspirators much older than he. *See* Dkt 436 at 19 (noting that the co-conspirators who agreed to plea deals were 15, 21, and 26 years older than Keyes, who was 18 at the time of the offense). The negative influence was played out in Felton's relationship with Alonzo Trice, the apparent leader of the conspiracy, who treated Felton as an adopted son. *See* PSR ¶ 14 (noting that Trice "was closest to Felton. Trice and Felton shared an extremely close bond, with Felton sometimes referring to Trice as 'Dad.'").

Finally, § 3553(a)(6) requires courts to impose a sentence that avoids "unwarranted sentence disparities" among defendants with similar records and culpability. In this vein, the Court notes that Felton received a significantly longer sentence than every one of his co-conspirators, including those who would have been subject to the murder cross-reference. PSR ¶ 16. The docket reflects that co-Defendant Trice, again the man purported to be the leader of the conspiracy, received a sentence of 180 months. Not only was Trice present at the murder, "Trice, as the leader, had on other occasions exercised control over Felton when firearms had been brandished, [and] failed on this occasion to prevent the ultimate outcome." *Id*. at ¶ 16. Recognizing that Trice received a substantially shorter sentence because he benefitted from a substantial assistance motion, Dkt. 167, it is noteworthy that his cooperation was in part to testify against his acolyte Felton. And while the "mere disparity among co-defendants' sentences is not a permissible ground for departure," *United States v. Quinn*, 359 F.3d 666, 682 (4th Cir. 2004),

here there is much more. The incongruity between Felton's sentence and that of his co-defendants only supports a conclusion which is drawn from other factors.

## C.

The Court finds that there should be a sentence reduction and that the sentence sufficient but not more than necessary to achieve Congress' sentencing goals as laid out in § 3553(a)(2) is 360 months.

## III.

Felton's motion for reduction of sentence, Dkts. 441, 451, will be granted in part. His term of imprisonment will be reduced to 360 months, consisting of 40 months on Count One, 120 consecutive months on Count Four, and 200 consecutive months on Count Five. All other terms of the sentence not altered by this memorandum will remain in full force and effect.

The Clerk of Court is directed to send copies of this Memorandum Opinion and the accompanying Order to Defendant, all counsel of record, the United States Probation Office, and the United States Marshals Service for delivery to the Bureau of Prisons.

Entered this 23rd day of February 2022.

*Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE